JS 44 (Rev 06 17)

**CIVIL COVER SHEET**

19-cv-2417

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Penny Hughes | Bryn Mawr Bank Corporation d/b/a Bryn Mawr Trust Company |

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U S PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery
*(IN U S PLAINTIFF CASES ONLY)*

NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name Address, and Telephone Number)*

Mark D Schwartz, 300 Sandcastle Drive, Bryn Mawr, PA 19010
610 525-5534

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ❏ 1  U S Government Plaintiff
- ☒ 3  Federal Question *(U S Government Not a Party)*
- ❏ 2  U S Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated or Principal Place of Business In This State | ❏ 4 | ☒ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated and Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | ❏ 367 Health Care Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers Liability | Personal Injury Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | Injury Product Liability | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal | ❏ 380 Other Personal Property Damage | | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | Injury | ❏ 385 Property Damage | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | ❏ 362 Personal Injury - Medical Malpractice | Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| | | | | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus** | ❏ 791 Employee Retirement Income Security Act | ❏ 870 Taxes (U S Plaintiff or Defendant) | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS  Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ☒ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | |
| ❏ 245 Tort Product Liability | ❏ 445 Amer w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer w/Disabilities - Other | **Other** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
Civil rights - Title VII - Section 198

Brief description of cause
Civil rights Furner

**VII. REQUESTED IN COMPLAINT:**
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

DEMAND $
>$150,000

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ Yes  ❏ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions)*   JUDGE ___   DOCKET NUMBER ___

JUN - 5 2019

DATE   June 5, 2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG JUDGE

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**19    2417**

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff _____ 5796 Dunlap Street, Philadelphia, Pa 19131

Address of Defendant _____ 801 Lancaster Ave, Bryn Mawr, PA 19010

Place of Accident, Incident or Transaction: _____ corporate locations of Defendant in Eastern Pa.

---

**RELATED CASE, IF ANY:**

Case Number _____    Judge _____    Date Terminated _____

Civil cases are deemed related when *Yes* is answered to any of the following questions

1  Is this case related to property included in an earlier numbered suit pending or within one year    Yes ☐    No ☑
previously terminated action in this court?

2  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit    Yes ☐    No ☑
pending or within one year previously terminated action in this court?

3  Does this case involve the validity or infringement of a patent already in suit or any earlier    Yes ☐    No ☑
numbered case pending or within one year previously terminated action of this court?

4  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights    Yes ☐    No ☑
case filed by the same individual?

I certify that, to my knowledge, the within case ☑ **is** ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above

DATE  June 5, 2019 _____    Pa 30527

Attorney-at-Law / Pro Se Plaintiff    Attorney I D # (if applicable)

---

**CIVIL: (Place a ✓ in one category only)**

| A. | **Federal Question Cases:** | B. | **Diversity Jurisdiction Cases:** |
|---|---|---|---|
| ☐ 1 | Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1 | Insurance Contract and Other Contracts |
| ☐ 2 | FELA | ☐ 2 | Airplane Personal Injury |
| ☐ 3 | Jones Act-Personal Injury | ☐ 3 | Assault, Defamation |
| ☐ 4. | Antitrust | ☐ 4 | Marine Personal Injury |
| ☐ 5 | Patent | ☐ 5 | Motor Vehicle Personal Injury |
| ☐ 6 | Labor-Management Relations | ☐ 6 | Other Personal Injury *(Please specify)* _____ |
| ☑ 7 | Civil Rights | ☐ 7 | Products Liability |
| ☐ 8 | Habeas Corpus | ☐ 8 | Products Liability - Asbestos |
| ☐ 9 | Securities Act(s) Cases | ☐ 9 | All other Diversity Cases |
| ☐ 10 | Social Security Review Cases | | *(Please specify)* _____ |
| ☐ 11 | All other Federal Question Cases | | |
| | *(Please specify)* _____ | | |

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, _____ Mark D. Schwartz _____, counsel of record or pro se plaintiff, do hereby certify

☑ Pursuant to Local Civil Rule 53 2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 00 exclusive of interest and costs.

☐ Relief other than monetary damages is sought

JUN - 5 2019

DATE  June 5, 2019 _____    PA 30527

Attorney at Law / Pro Se Plaintiff    Attorney I D # (if applicable)

NOTE  A trial de novo will be a trial by jury only if there has been compliance with F R C P 38



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

*Penny Hughes*

CIVIL ACTION

v.

*Bryn Mawr Bank Corporation*
*d/b/a Bryn Mawr Trust Company*

NO. 19     2417

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (✗)

June 5, 2019                  *Mark D Schwartz*  Plaintiff
_____            _____        _____
Date                        Attorney-at-law              Attorney for
610 525-5534                610 525-5534                 Markschwartz6814@
_____            _____        gmail.com
Telephone                   FAX Number                   E-Mail Address

(Civ. 660) 10/02

JUN - 5 2019

JUN - 5 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PENNY HUGHES                          :
5796 Dunlap Street                    :
Philadelphia 19131                    :        CIVIL ACTION
                        Plaintiff     :
                                      :        NO.    19    2417
                                      :
                v.                    :        JURY TRIAL DEMANDED
                                      :
BRYN MAWR BANK CORPORATION d/b/a      :
BRYN MAWR TRUST COMPANY               :        COMPLAINT
801 Lancaster Avenue                  :
Bryn Mawr, PA 19010                   :
                        Defendant     :
_____   :

## COMPLAINT

1.      Plaintiff Penny Hughes, an African-American female has been discriminated against on account of race, unfairly targeted, penalized, retaliated against and ultimately fired as a result of standing up for her rights. She has been subjected to a racist and discriminatory atmosphere which pervades Bryn Mawr Trust Company, all of which is countenanced and supported by management. After complaining of discrimination and retaliation internally and being fired, Ms. Hughes filed a charge of discrimination with the EEOC. She now seeks to recover compensatory and punitive damages pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et seq*

### PARTIES

2.      Plaintiff Penny Hughes ("Ms. Hughes" or "Plaintiff") is an adult female born on October 21, 1964 residing in the Commonwealth of Pennsylvania.  She was initially hired as a Customer Service Representative/Teller and was continuously employed by Defendant at various branch locations from October, 2006 through to her firing on January 31, 2018.  As an African-

1

American female, she was and remains a member of a protected category of individuals under pertinent civil rights statutes.

3.      Defendant, Bryn Mawr Bank Corporation d/b/a Bryn Mawr Trust Company ("Defendant" or the "Bank") is a publically-traded commercial bank, headquartered at 801 Lancaster Avenue in Bryn Mawr, Pennsylvania.  The Bank employed Ms. Hughes and approximately 600 employees and is an employer as defined by Title VII and the PHRA.

4.      At all relevant times hereto, Defendant acted by and through its duly authorized actual and/or apparent agents and employees acting within the course and scope of their actual and/or apparent agency and employment.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction over the subject matter of Plaintiff's claims under federal law pursuant to 28 U.S.C. §1331.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state claims and federal claims are so interrelated that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. §1391(b) and (c) since Plaintiff and Defendants reside in the Eastern District of Pennsylvania and since the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania.

## FULFILLMENT OF TITLE VII CONDITIONS

8.      Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII and PHRA.  Plaintiff dual-filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations

Commission ("PHRA") on or about July 11, 2018

     9.     The EEOC issued a Right to Sue letter to the Plaintiff on March 7, 2019, and this

lawsuit is brought within ninety (90) days of the issuance of the Right to Sue letter

## **FACTUAL ASSERTIONS**

     10.     From the outset of Plaintiff's employment in December, 2008 as a Customer

Service Representative/Teller at the Wayne branch, she encountered the Bank's hostile racial

environment, being told by Branch Manager Ms. Callaghan that she would never make it at the

Bank. "I did not interview you, and if I did…. You would not have been my choice." As time

went on, Ms. Callaghan never missed an opportunity to denigrate and humiliate Plaintiff in front

of others, such as shouting at Plaintiff in front of a client: "I can't believe you don't know how to

do this." In another instance Ms. Callaghan wanted Plaintiff to complete paperwork for her. She

threw the papers at Plaintiff which missed her desk and fell to the floor. Plaintiff refused to pick

them up and Ms. Callaghan screamed to the point that Plaintiff called Ms. Callaghan's superior,

Ms. Cohen.

     11.     When clients with large sums of money would come in, Ms. Callaghan would

interrupt and take over, depriving Plaintiff of credit for origination. When it came to training,

Plaintiff was excluded, ignored and was the last one able to go whenever training sessions were

held. Deprived of training, so as to learn the function and operation of her job, Plaintiff would

read manuals and ask others, for example, calling Branch Operations for help.

     12.     The workplace continued to be so uncomfortable that Plaintiff called Ms. Cohen

to let her know that Plaintiff would be putting in her two-week notice of resignation. Ms. Cohen

told her that there was an opening at the Bank's main branch in Bryn Mawr and asked that

Plaintiff to hold off when it came to resigning. Plaintiff was interviewed for the position at the main branch and was subsequently informed while on vacation that she was approved for the position effective immediately. Plaintiff was told not to return to the Wayne office. Notwithstanding, Ms. Callaghan continued the harassment and punishment, telling Plaintiff that she had already done the schedule for Wayne, having assigned Plaintiff to work the next three Saturdays, which Plaintiff was required to do, notwithstanding the previous instruction not to go back to Wayne.

    13.    Plaintiff commenced her position at Bryn Mawr in December, 2008. She initially thrived there and gained a reputation such that those at other branches would call her Branch Manager, Ms. Barb Newcomer, to see if new hires could sit with Plaintiff and be trained. In her job review she received the highest marks that one could get. However, Plaintiff's optimism would soon be crushed by Stephen Novak, then Regional Manager (now SR VP of Retail Banking) who came by her desk and said "You know, this will not happen again." Plaintiff was crushed. Then, in lockstep a few days later, Ms. Newcomer asked Plaintiff to tone down her makeup. Plaintiff could tell that Ms. Newcomer was upset about having to ask her. Several weeks later Mr. Novak asked Plaintiff "Who taught you to do that?" Plaintiff replied "Do what?" His response was "your make-up, it looks better this way." Plaintiff was mortified. Subsequently, Plaintiff was instructed by Ms. Robin Otto to cut her nails down. Plaintiff asked "What do my nails have to do with my job performance? They are clean and nicely polished." The response she was given was that it was offending some clients. When Plaintiff did not comply, she would overhear various managers say "I can't believe she is at the first desk with those nails looking like claws." Plaintiff's nails never looked like claws. Others were more candid in displaying the underlying racist motivation by saying "I can't believe she is at the first

4

desk period." Plaintiff was further humiliated regarding her nails when Manager Robin Otto ran her fingers over Plaintiff's nails at a manager's meeting, telling her later, "DO you like how subtle I was?" Plaintiff felt that there was nothing subtle about it.

14.     In January of 2009, Plaintiff transitioned to the position of Assistant Manager at the Paoli branch. On one occasion, in approximately January of 2011, a meeting was held regarding branch goals with Plaintiff, Mr. Novak and others. After the meeting, Mr. Novak told Plaintiff "At the next meeting look around the room and mirror yourself after them and take a look at the pictures on the wall." As Mr. Novak well knew in making his racist dig, Plaintiff could never be or look like any of those people referred to by Mr. Novak as they were all Caucasian.

15.     Despite Plaintiff's eventual separation from Ms. Callaghan and the Wayne branch, the harassment continued from Ms. Callaghan who accused Plaintiff of stealing a client from her. Instead of recognizing that the client was not getting adequate service from Ms. Callaghan, with the client therefore preferring to work with Plaintiff, management scolded Plaintiff in January of 2011. This was not the only incident where Plaintiff worked with clients who had been mishandled by others. Notwithstanding Plaintiff's work, management insisted that another person get the credit.

16.     Plaintiff then proceeded to the position of Branch Manager for the Swarthmore branch in 2011. While there she considered it an honor to be on the Events Committee for the Bank and was asked to give the "welcome address" at an employee dinner in 2012. She thought it went well as it occasioned tears and a lot of laughter. She received compliments from many. However, the next time she ran into Mr. Novak, he continued his vendetta by instructing her "You should be more careful about what you say." When Plaintiff asked him what he meant, he

responded by saying "I heard about your speech the other night. That is one of the reasons I don't put you on some projects or have you go to certain business functions. I just don't know what you would say."

17.    In December of 2012, Plaintiff moved to the Bank's Bala Cynwyd branch, a brand-new branch which Plaintiff was responsible for opening. She viewed it as a new opportunity. However, true to form, after a January, 2013 meeting of representatives of all branches to discuss strategy and goals, Mr. Novak took Plaintiff aside, this time specifically directing Plaintiff: "Do not go business calling Narberth. Therese Trainer (Ardmore Manager) will take care of Narberth. That's her area." Plaintiff explained to him that Narberth was connected to and specifically within the jurisdiction of the Bala Cynwyd office. She went on to say that is surely there was enough business for the two of them. However, Novak was insistent stating "I think it's best to let Therese Trainer handle Narberth." Plaintiff was devastated.  With some frequency, Ms. Trainer, on overt racist, got credit for clients and services originated by Plaintiff.

18.    While at Bala Cynwyd, Plaintiff took on a training role for new employees or those in need of training and came to resent the fact that she was passed over for positions by those she had trained. For example, when asked at a meeting attended by Novak, an HR representative and Regional Manager Pat Savino, Plaintiff was asked "Where do you see yourself in the future or where do you want to be?" Plaintiff said that she would like to be a Regional Manager. This was difficult for Plaintiff who had trained Ms. Savino and had applied without success for the Regional Manager position that Ms. Savino was instead awarded.

19.    As new positions were advertised, Plaintiff would repeatedly apply, sometimes get an interview, and then be turned down for the position.  She wanted to know why this was

the case, so she made inquiries in some instances. In 2015 and 2016 when she did not secure an open regional position, Plaintiff asked, Sr. VP of Retail McDonald why this happened. Ms. McDonald demeaningly told her "I don't think you have enough business experience or could handle yourself in a business setting." In another instance where Plaintiff was interested in a regional position, she approached HR to see if she could get an interview.  HR representative Fryer curtly told her that "If you have not heard anything by now, they probably don't' want to interview you." The Bank had hired someone from the outside, who Plaintiff then had to train. Despite the racist allegation that it was not appropriate for her to be in a business setting, repeatedly, Plaintiff was recognized by management to be good enough to train someone for a particular job which she herself was qualified for.  Plaintiff came to realize that despite those obvious qualifications, she would never have a regional position.

20.      At one-time, Plaintiff was the only African- American Bank manager and upon information and belief was only the second African- American Manager in the Bank's history. S Frank Leto, now CEO would stop in and visit her.

21.      However, reviews came to be painful for Plaintiff. One review, received on November 22, 2016, was upsetting.  In an email from Market Area Manager Pat Savino to Plaintiff, the statement is made that "We have seen a change in Penny's behaviors recently that have led to this meeting. Penny seemed to enjoy being a part of many special projects and initiatives in 2015 but now that things back to 'Business as Usual (BAU)', we are seeing a lack of engagement and overall concern with her ability to adjust and continue to lead our Bala Cynwyd branch." Ms. Savino's recommendation is that "Penny change her confrontational, negative attitude immediately." Of course, those who are racist use this kind of language classifying all blacks as confrontational and negative, regardless of whether Plaintiff and other

7

Bank African-American employees had good reason to be confrontational and negative due to having to work in an atmosphere tolerating and encouraging racial discrimination. Notwithstanding that environment of discrimination, at all times Plaintiff's demeanor was professional. Ms. Savino went on to use loose and unsubstantiated terminology such as "Perception with Organization", "Lack of Engagement", "Leadership", "Relationships", "Overbearing & Controlling Style", and "Empowerment". In contrast to what can only be described as a hit job, the last paragraph patronizingly read as follows: "It's important to note that Penny has many good attributes, skills and experience that can and do greatly benefit Bryn Mawr Trust. If Penny is open to change, we would like to support her in becoming a true leader who is supportive of our mission."

22.     Incensed at this latest indignity, Plaintiff wrote back to Ms. Savino with a point-by-point rebuttal, in anything but a "negative" or "confrontational" manner, ending with the following positive statement when she could have instead detailed the racist history that she experienced and complained of which was never rectified.:

> I have been with BMT for 10 years, worked for 8 Managers and reported to seven different locations. I have been a buddy for two system conversions and have worked on multiple projects. In my tenure I have never been told that I was perceived as anything other than a team player who was committed to the success of BMT.  I pride myself on creating an environment where my staff is proficient and professional. I plan to continue to support my team and help ensure that we achieve our team goals. I am hoping that going forward that we can establish honest and open communication that is not based on perception or hearsay. In the future, I feel that it would be advantageous to both of us if you could address any negative feedback that you receive with me immediately. Withholding this type of feedback until it escalates it [sp] not beneficial to anyone.

23.     Proceeding into 2017 through to her firing, Plaintiff continued to experience harassment through writeups that involved anything but serious, let alone egregious, conduct.

Issues raised with respect to the "Bank Secrecy Act" were selectively made against her, when senior management was not sanctioned for lack of anything resembling systemic compliance. Employees system-wide were afraid that simply forgetting to update client information would result in their firing. Plaintiff received three notices and distinctly remembers her manager directing her to assume one of the notices for an employee under training, so that the employee would not be given a final warning and be fired.

24.    Plaintiff also received notice of her purported failure to follow the Bank's Customer Identification Policy, a truly antiquated and amorphous policy of verifying signatures, that has been used by the Bank as a pretext to get rid of employees. Here Plaintiff went back and forth with her then new Regional Manager Chris DiBello for months up until the beginning of 2018 and was assured by a superior that she would not be fired. Purportedly, the matter was dropped, as Plaintiff to date has never been supplied with a write-up. It should be noted that Plaintiff had three regional managers in the course of three years. Ms. Savino was replaced by Mr. DiBello, who was in turn replaced by Ms. Biernacki.

25.    The final harassment and stigma suffered by Plaintiff led to her termination on January 31, 2018. The FBI called her earlier sometime that January and asked for a meeting. Plaintiff spoke to then Regional Manager, Laura Biernacki who said it was just routine. Plaintiff also alerted bank security. The FBI came in with a stack of bank statements and met with Plaintiff. Plaintiff called Ms. Biernacki when the FBI left and sent an email to her, the Bank's Fraud Department and Branch Administration.  Plaintiff was under the impression that everything was fine. Several days later Ms. Biernacki, HR representative Nicole Fryer, and an individual from the Fraud Department met with Plaintiff. They asked her what happened and what information was given away to the FBI.  The Fraud representative claimed that the Bank

9

was investigating the client involved and accused Plaintiff of doing something wrong by cooperating with the FBI. However, Plaintiff told Ms. Fryer and the Fraud representative that she only followed Ms. Biernacki's instruction. Plaintiff was then told to go home. Plaintiff asked Ms. Biernacki what was going on and whether she was going to be fired. She was told "No. Go home. I'll see you tomorrow." Notwithstanding, that evening Plaintiff received a telephone call from Ms. Fryer and Ms. Biernacki informing her that the Bank was firing her. In consistently patronizing fashion, Ms. Fryer then thanked Plaintiff for all of her "hard work" and told her that someone would be in touch to make arrangements for her to get her personal effects. After the passage of three weeks and no call from HR, Plaintiff reached out to the office's security guard who told her that someone had been in her desk as some of Plaintiff's belongings were in a box in the conference room. Worried that her notary stamp was thus exposed for anyone to use, Plaintiff and her sister drove to the branch to retrieve the notary stamp and whatever else was in the box. Plaintiff sat outside in the car as she could not bring herself to go inside. Plaintiff subsequently never heard from anyone in HR.

26.     Plaintiff has spent years of enduring unrelenting discrimination, witnessing the hurtful and humiliating behavior that others like Stephen Novak and his racist proteges were able to get away with, all fully sanctioned by senior Bank management. All the while she responsibly and tenaciously worked hard. included training over thirty employees while herself being repeatedly passed over for a promotion. All the while she towed the Bank's party line about the importance of teamwork, always hoping that she would be a promising career. In fact, in a two-minute telephone call it all went down the drain.

## COUNT I
## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

27.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

28.     Defendant has discriminated against Ms. McDaniel by denying her the same rights as are enjoyed by white employees with respect to performance, terms, location, conditions, benefits, privileges, promotion, discipline and emoluments of their employment relationship with the Bank, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

29.     Defendant's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

30.     By reason of the continuous nature of Defendant's discriminatory conduct, persistent throughout Plaintiff's employment with Defendant, she is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

31.     By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under § 1981, including but not limited to damages for mental anguish and emotional distress, reasonable attorney fees and costs, as well as punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

11

## COUNT II

## RACIAL DISCRIMINATION, RETALIATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq*

32.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

33.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful for employers to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

34.     Discrimination on the basis of race that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII as racial discrimination. In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her race; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that respondeat superior liability exists. In the totality of circumstances, the foregoing five elements are established.

35.     Defendant retaliated against Plaintiff as a result of her complaints of discriminatory treatment and a hostile work environment.

36.     Defendant is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of its managers and employees.

37.     Defendant is liable for the acts of management and Plaintiff's co-workers, because it knew of the existence of a discriminatory and a hostile work environment, but allowed the illegal acts and practices to continue.

12

38.     Defendant is liable for the acts alleged herein because of its culture of encouraging racial discrimination, harassment and retaliation.

39.     Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her race and retaliated against her for standing up for herself, in deprivation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq. as amended.*

40.     Defendant unlawfully retaliated against Plaintiff for filing charges with the EEOC and the Pennsylvania Human Relations Commission.

41.     The described unlawful employment practices by Defendant were intentional, deliberate, willful and were with malice or reckless indifference to Plaintiff's rights protected by the laws of the United States, as well as the laws of the Commonwealth of Pennsylvania.

42.     By reason of Defendant's discrimination, retaliation and maintenance of a hostile work environment, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT III

### RACIAL DISCRIMINATION, RETALIATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

43.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

44.     This claim arises under the Pennsylvania Human Relations Act ("PHRA"). The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

45.     Plaintiff, as an African-american in a protected class because of her race.

46.     Based upon the foregoing facts, Defendant has discriminated against Plaintiff on the basis of her race and has deprived her of her rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. seq.*

47.     The effect of the aforementioned practices has been to deprive Plaintiff of equal employment opportunities and adversely affect her status as an employee because of her race.

48.     Racial discrimination that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under the Pennsylvania Human Relations Act as race discrimination.

49.     With respect to allegations of discrimination and retaliation, Defendant is liable for the acts of its supervisory and management employees, because the harassers and those who effectuated the discrimination used their actual or apparent authority to further the unlawful conduct, and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

50.     Defendant is liable for the acts alleged herein because its managers and supervisors established its corporate culture which encouraged racial discrimination as well as a hostile work environment.

51.     The described unlawful employment practices and actions by Defendant were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the laws of the Commonwealth of Pennsylvania.  These unlawful acts were committed because

14

of her race and the fact that she stood up for herself in opposition to illegal practices directed against her.

52.     By reason of Defendant's discrimination, retaliation and maintenance of a hostile work environment, Plaintiff is entitled to all legal and equitable remedies available.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, including any and all recoverable economic and noneconomic loss, punitive damages, reasonable attorneys' fees and costs, and other relief as permitted under the law and as this Court deems just and proper.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

53.     Plaintiff restates and realleges all previous paragraphs as though fully set forth herein.

54.     Defendants acted recklessly or intentionally by discriminating and retaliating against Plaintiff.

55.     Defendant's conduct exhibited toward Plaintiff was extreme and outrageous.

56.     As a direct and proximate result of the extreme and outrageous conduct of Defendants as set forth above, Plaintiff has suffered severe emotional distress and has required medical treatment in connection with her severe emotional distress.

57.     The extreme and outrageous conduct of Defendants, as set forth above, which was committed with a reckless indifference to the rights of Plaintiff, warrant the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant and requests an award of damages including, but not limited to compensatory damages, punitive damages, reasonable attorneys' fees and costs, and other relief as this court deems appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury of eight on all issues triable by a jury.

## CERTIFICATION

I hereby certify that Plaintiff has not brought a similar or related lawsuit encompassing the claims brought in this matter.

Respectfully Submitted,

**MARK D. SCHWARTZ, ESQUIRE**

By: /s/ Mark D. Schwartz
Mark D. Schwartz, Esquire (Pa ID #30527)
300 Sandcastle Drive.
BRYN MAWR, PA 19010
Telephone & Fax 610 525-5534
Markschwartz6814@gmail.com

**THE PEARLMAN LAW FIRM, PLLC**

By:    /s/ Jason L. Pearlman
Jason L. Pearlman, Esquire (Pa ID #93879)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
610-660-7793
jpearlman@pearlmanlawfirm.com

DATED: June 5, 2019                    *Attorneys for Plaintiff Penny Hughes*

16

## <u>VERIFICATION</u>

I, Penny Hughes, do hereby certify that I am the Plaintiff in the within action, and that the

facts contained in the foregoing Complaint are true and correct to the best of my knowledge,

information and belief. I do further understand that these statements are made subject to the

penalties of 18 Pa.C.S. § 4904, relating to unsworn falsifications to authorities.

Dated: June 5, 2019

Penny Hughes